IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AMERICAN MOTORISTS INSURANCE
COMPANY,

          Plaintiff,

   v.

FIREMAN'S FUND INSURANCE
COMPANY,

          Defendant.

_____/

No. C 05-01030 CRB

**MEMORANDUM AND ORDER**

Before this Court are cross-motions for summary judgment brought by Plaintiff American Motorists Insurance Company ("AMICO") and Defendant Fireman's Fund Insurance Company ("Fireman's").[1]  The question presented is whether, based on the evidence available to Fireman's at the time its insured tendered a defense, Fireman's owed Electro Source ("ES"), the insured party in the underlying action, a duty to defend against various trademark infringement claims.  For the reasons set forth below, this Court finds that no reasonable jury could find that Fireman's owed ES a duty to defend in the underlying action.  Accordingly, this Court GRANTS Fireman's motion for summary judgment and DENIES AMICO'S motion for partial summary judgment.

_____

[1] AMICO filed the original motion for partial summary judgment, in response to which Fireman's filed an opposition.  Fireman's subsequently filed a separate cross-motion for summary judgment in which they simply incorporate their opposition to AMICO's original motion.  Both motions present the same narrow legal question of Fireman's duty to defend.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**BACKGROUND**

The following facts are all undisputed: AMICO and Fireman's both provided insurance coverage, though during different time periods, to ES, a company involved in the distribution of home video game accessories.  (Plaintiff's Motion for Partial Summary Judgment "Plaintiff's Motion" at 2:15-17, 3:12-14; Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment "Defendant's Opposition" at 3:7-11.)  AMICO issued two insurance policies that together provided coverage to ES from December 1, 1997, to December 1, 1999.  (Plaintiff's Motion at 2:15-17.)  Neither one of AMICO's policies is at issue in the present motions.

Fireman's issued a general liability policy ("the Policy") providing coverage to ES from December 1, 1996, to December 1, 1997, a period that predated AMICO's policies.  (Defendant's Opposition, Ex. 1.)  In particular, and at issue in the present dispute, Fireman's Policy provided coverage for "[a]dvertising injury caused by an offense committed in the course of advertising . . . goods, products or services."  Id.  The Policy defined "advertising injury" to include "[m]isappropriation of advertising ideas or style of doing business . . . or [i]nfringement of trademark, copyright, title or slogan."  Id.  Thus, the Policy did not provide coverage for trademark infringement alone, but rather for trademark claims based on ES's "advertising" of goods or services.  See id.

At some point in 1996, ES decided to expand its foray into the video game accessory market by developing a division called "Pelican Accessories."  (Plaintiff's Motion, Ex. F.)  ES applied for registration of the PELICAN trademark on March 27, 1997, and applied for registration of a pelican logo on May 12, 1997.  Id.  The Registration for the PELICAN trademark issued on June 29, 1999; it identifies August 1997 as the date on which that trademark was first used, and September 1997 as the date on which it was first used in commerce.  Id.  The Registration for the pelican logo issued on October 12, 1999, and lists January 1998 as the date of both first use and first use in commerce.  Id.

In early 2001, ES sued Pelican Products, a company involved in the manufacture and distribution of, among other things, carrying cases.  (Plaintiff's Motion, Ex. C.)  Pelican

United States District Court
For the Northern District of California

1   Products then filed a counterclaim (the "Counterclaim") in which it alleged trademark

2   infringement, trademark dilution, false designation of origin, and unfair competition.

3   (Plaintiff's Motion, Ex. A)  Among the allegations contained in the Counterclaim were that

4   ES applied confusingly similar trademarks to advertisements and goods used in interstate

5   commerce.  (Id. ¶¶ 28, 36, 54, 60, 65.)

6        On September 3, 2002, nearly a year and a half after the underlying action

7   commenced, ES tendered a defense to Fireman's and AMICO to defend against the

8   Counterclaim.  (Plaintiff's Motion, Ex. D.)  AMICO agreed to defend.  (Plaintiff's Motion at

9   4:10-11.)  The lawsuit between ES and Pelican Products apparently settled shortly thereafter,

10   on or about September 26, 2002.  However, the issue of Fireman's duty to defend was not yet

11   resolved.

12        Fireman's ultimately refused the tender.  (Plaintiff's Motion, Ex. F.)  In a letter dated

13   January 2, 2003, Fireman's informed ES that it had not seen anything indicating the

14   PELICAN mark or the Pelican logo was actually used in advertising prior to December 1,

15   1997, when the Policy period ended.  (Defendant's Opposition, Ex. 16.)  In order to evaluate

16   its obligations under the Policy, Fireman's requested additional information, including copies

17   of advertisements or documentation relating to advertising activity prior to December 1,

18   1997.  Id.  Such records, however, were never produced to Fireman's.  (Plaintiff's Opposition

19   to Defendant's Cross-Motion for Summary Judgment "Plaintiff's Opposition" at 6:3-5.)

20   Indeed, according to Fireman's, attorneys for ES responded that they "could not locate any

21   such documents and thus [were] unable to provide copies of advertising using the mark prior

22   to December 1, 1997."  Decl. of Jeffrey Kaufman ¶ 3.

23        On April 5, 2004, Fireman's informed ES of its determination that, under the Policy, it

24   had no duty to defend the claims made by Pelican Products.  (Plaintiff's Motion, Ex. F.)

25   AMICO subsequently filed this action seeking equitable contribution from Fireman's for its

26   defense of ES in the underlying litigation.

27   //

28   //

3

**United States District Court**
For the Northern District of California

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the non-moving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial has the initial burden of either producing evidence that negates an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). Where the party moving for summary judgment would bear the burden of proof at trial, it bears the initial burden of producing evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000).

If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. If, however, the moving party satisfies its initial burden of production, then the non-moving party may not rest upon mere allegations, or denials of the adverse party's evidence, but instead must produce admissible evidence to show there exists a genuine issue of material fact. See Nissan Fire, 210 F.3d at 1102.

**United States District Court**
For the Northern District of California

**DISCUSSION**

AMICO claims that Fireman's owed a duty to defend ES because the allegations made in the Counterclaim were potentially covered under the Policy.  (Id. at 1:8-10.)  AMICO also observes that Fireman's could decline defense only if, at the time of ES's tender, Fireman's could rely on undisputed facts that conclusively eliminated the potential for liability. AMICO argues that no such conclusive evidence existed and that Fireman's therefore had a duty to defend under the policy.  (Plaintiff's Opposition at 7:21-25.)  Fireman's takes the position that ES engaged in no advertising during the Policy's coverage period, and that it therefore had no duty to defend since the Policy insured only "advertising injury." (Defendant's Reply to Plaintiff's Motion for Partial Summary Judgment at 1-8.)  In other words, Fireman's argues that it had no duty to defend because the uncontroverted facts available to it at the time of the tender offer established there was no potential for coverage.

Under California law, an insurer's duty to defend is far broader than its responsibility to indemnify.  Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275-77 (1966).  Indeed, "[a]n insurer's duty to defend must be analyzed and determined on the basis of any potential liability arising from facts available to the insurer from the complaint or other sources available to it at the time of the tender of defense."  CNA Cas. of Cal. v. Seaboard Surety Co., 176 Cal. App. 3d 598, 605 (1986) (emphasis in original).  The duty to defend, however, is not without limitation.  An insurer may decline to defend if extrinsic facts eliminate the potential for coverage.  Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 19 (1995); Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 298 (1993).

In the present case, ES tendered a defense to Fireman's approximately a year and a half after the underlying action commenced.  Therefore, in addition to the allegations made in the Counterclaim, Fireman's had available to it other extrinsic facts upon which it could properly rely in determining whether it had a duty to defend ES.  Fireman's contends that, in light of these facts, there was no potential for liability for any acts committed by ES during the policy period and, consequently, that Fireman's had no duty to defend.  Montrose, 6 Cal.

5

United States District Court
For the Northern District of California

1    4th at 298; Waller, 11 Cal. at 19.  This Court examines the Counterclaim and the extrinsic

2    facts available to Fireman's at the time of the tender offer in turn.

### A.  The Counterclaim

4         AMICO argues that Pelican Product's allegations of trademark infringement

5    beginning in 1997 were sufficient to trigger the "advertising injury" provision of the Policy.

6    (Plaintiff's Motion at 6:19-22.)  AMICO calls particular attention to paragraphs 20 and 69 of

7    the Counterclaim.  (Id. at 6:22-25.)  Paragraph 20, in relevant part, alleges that, "in August

8    1997, [ES] switched the mark on its [video game] carrying cases from ELECTRO SOURCE

9    to PELICAN[.]"  (Plaintiff's Motion, Ex. A.)  Paragraph 69 alleges that, "[s]ince 1997, [ES]

10   has infringed the mark PELICAN and the Pelican Design marks by marketing and selling

11   goods bearing confusingly similar marks[.]"  Id.; see also id. ¶ 77.

12        This Court agrees with AMICO that, if the tender offer were evaluated based solely on

13   the allegations presented in the Counterclaim, Fireman's would have had a duty to defend.

14   The Counterclaim did, after all, allege that ES applied confusingly similar trademarks to

15   advertisements and goods used in interstate commerce.  (Plaintiff's Motion, Ex. A at ¶¶ 28,

16   36, 54, 60, 65).  Further, the Counterclaim alleges that ES had engaged in this improper

17   conduct beginning "in August 1997," or alternatively "[s]ince 1997," a time frame that

18   encompasses at least a portion of the Policy period.  Id. ¶¶ 20, 69.  However, by the time

19   defense was tendered, Fireman's had available to it additional extrinsic facts upon which it

20   could properly rely to evaluate its obligations under the Policy.  (Defendant's Opposition,

21   Ex. 16.)  As discussed below, the Court finds that this extrinsic evidence would compel a

22   rational trier of fact to find that Fireman's had no duty to defend.

### B.  The Extrinsic Evidence

24        Neither party disputes that ES applied for registration of the PELICAN mark and logo

25   in 1997.  (Plaintiff's Motion at 4:17-24; Defendant's Opposition at 4:15-28.)  As to the

26   Pelican *logo*, there is also no dispute that the Patent and Trademark Office identified January

27   1998 as the date of first use.  Since Fireman's Policy ended on December 1, 1997, the

28   undisputed evidence thus establishes that ES could have incurred no liability whatsoever due

United States District Court
For the Northern District of California

1  to its use of the Pelican logo at the time the Fireman's Policy was in effect.  As to the

2  PELICAN *mark*, the parties do not dispute that the Patent and Trademark Office identified

3  August 1997 as the date on which the mark was first used, and September 1997 as the date

4  on which the mark was first used in commerce.  (Plaintiff's Motion at 4:17-24; Defendant's

5  Opposition at 4:15-28.)  Lastly, the parties also do not dispute that, between August and

6  December 1, 1997, ES sold only one product, a hard carrying case, through its Pelican

7  Accessories division.  (Plaintiff's Opposition at 4:15-18; Defendant's Opposition at 5:3-5.)

8  Thus, the undisputed evidence demonstrates that the only possible injury Pelican Products

9  could have suffered during the Policy period was from the use of the PELICAN mark in

10  commerce between September 1997 and December 1, 1997, in connection with the lone item

11  manufactured or sold by ES during that period.

12         As noted above, however, the Policy does not give rise to a duty to defend as to *all*

13  claims arising out of ES's use of the PELICAN mark, but only as to claims arising from its

14  use in *advertising*.  As to that issue, Fireman's has adduced additional evidence indicating

15  that ES did not advertise any Pelican Accessories division products during the Policy period.

16  First, Fireman's points to the deposition testimony of two ES executives, both of whom were

17  deposed before September 3, 2002, the date on which defense was tendered.  On July 24,

18  2001, Robert Siedler, ES Vice-President, stated that it was not until 1998 that the Pelican

19  Accessories division started doing substantial sales and became a marketable force as a

20  profitable entity in the company.  (Defendant's Opposition, Ex. 8 at 43:4–44:16.)  On June

21  28, 2002, Moris Mirzadeh, co-founder and part-owner of ES, testified that no significant

22  effort was made to ensure successful launch of the Pelican Accessories division.

23  (Defendant's Opposition, Ex. 7 at 41:2-12.)  Taken together, these depositions indicate that

24  ES took no steps to advertise its products using the PELICAN name during 1997, when

25  Fireman's Policy was in effect.

26         As a party moving for summary judgment without the ultimate burden of persuasion

27  at trial, Fireman's has only the initial burden of showing that AMICO does not have enough

28  evidence on an essential element of its claim.  See Nissan Fire, 210 F.3d at 1102.  The Court

is persuaded the Fireman's has carried this burden.  Specifically, Fireman's has demonstrated "the absence of any potential for coverage" under the Policy because it has set forth evidence from which a reasonable trier of fact would be compelled to conclude that ES did not engage in advertising using the PELICAN mark in 1997.  <u>Montrose</u>, 6 Cal. 4th at 300.  To rebut Fireman's showing, AMICO has the burden of producing evidence to establish that a genuine issue of material fact exists regarding the possibility of coverage due to ES's use of advertising during the Policy period.  <u>Nissan Fire</u>, 210 F.3d at 1102.

In that regard, AMICO has called attention to two declarations by Chris Richards, president of ES's Pelican Accessories division, (Defendant's Opposition, Exs. 5, 20), and to an expert report prepared by Robert Sherwin in connection with the underlying litigation. (Defendant's Opposition, Exs. 11, 12, 14).

Turning first to the Sherwin report, that document provides no indication of any actual advertising using the Pelican logo in 1997.  In the report, Mr. Sherwin computes damages allegedly caused to Pelican Products by ES's use of the infringing trademark and logo. (Defendant's Opposition, Ex. 11.)  While he purports to provide an estimate of damages caused between 1997 and 2002, Mr. Sherwin explicitly relies only on advertising expenditures by ES during the year 2001.  <u>Id.</u> at 6 ("I assumed that the sales deductions in 2001 was appropriate for earlier years as well . . . ."); <u>see also</u> <u>id.</u> at 8 ("I used this [2001] figure, as well as its proportion to sales . . . to estimate the total advertising expenditures attributable to the [Pelican Accessories] division over the 1997 to May 2002 period.").  From this 2001 data alone, Mr. Sherwin extrapolates an estimate of damages for the larger time period, including an extrapolation back to the policy period.  <u>Id.</u> at 7-8.  The report is thus based upon two explicit assumptions: first, that ES advertised in 1997 at all, and second, that it advertised at the same rate of expenditure that it did four years later in 2001.  Mr. Sherwin's report therefore provides no evidence for the actual proposition it assumes-- namely, that ES actually engaged in advertising using the Pelican mark in 1997.

Consider next the Richards declarations.  In the first of these documents, Richards indicates that ES, through is Pelican Accessories division, sold carrying cases bearing the

8

United States District Court
For the Northern District of California

PELICAN mark between August and December of 1997.  AMICO contends that this

statement constitutes evidence of advertising injury during the policy period.  California law,

however, is to the contrary.  Though certain uses of trademark *could* constitute advertising,

the use of a trademark on product packaging alone is not "advertising" as defined by the

Policy.  See Hameid v. Nat'l Fire Ins. of Hartford, 31 Cal. 4th 16, 24 (2003) (interpreting

"advertising," as used in general commercial liability policies such as the one presented here,

to mean "widespread promotional activities usually directed to the public at large").  This

Court therefore fails to see how the fact that the Pelican Accessories trademarks were used

on product packaging could lead a rational trier of fact to conclude that ES advertised its

Pelican Accessories products prior to December 1, 1997.

The second Richards declaration is similarly unconvincing.  In that document, the

CEO of the Pelican Accessories division states:

> 9.  Pelican Accessories has used both of the "Pelican" marks continuously
> since September 1997 [for the trademark] and January 1998 [for the logo],
> respectively.
>
> . . . .
>
> 11.  Pelican Accessories uses its registered trademarks on everything to do
> with the division's activities including its letterhead, products, product
> packaging, advertisements, promotional materials, etc.

(Defendant's Opposition, Ex. 20.)  AMICO contends that this document constitutes evidence

from which a reasonable juror could conclude that there is a possibility that ES advertised

with the Pelican mark during the Policy period.  Read in isolation, this may be true.  After

all, these two paragraphs, like the allegations in the Counterclaim itself, indicate two things:

(1) that ES had an active line of goods under the Pelican name as of August 1997, and (2)

that ES at some point used the Pelican name in advertising.  AMICO thus argues that if a

juror were to put these two assertions together, he could reasonably infer that ES used the

Pelican mark in advertising in 1997.  The problem with AMICO's argument is that this

inference is completely unjustified in light of the evidence that was available to Fireman's at

the time of the tender offer.  As noted above, other ES executives indicated that the company

made no effort to launch or to market its Pelican Accessories products until 1998.  Indeed,

**United States District Court**
For the Northern District of California

1  upon closer examination, the second Richards declaration supports Fireman's view that no

2  such advertising took place, rather than AMICO's suggestion that it might have.  For

3  example, in Paragraph 16, Richards provides a list of "examples of the type of advertising

4  purchased by [ES] to market its Pelican Accessories products," including "true and correct

5  copies" of advertisements in various publications relating to video games.  None of the

6  examples that Richards provides dates from 1997--that is, all of them post-date the policy

7  period.  Thus, even the Richards declaration, which acknowledges that ES first used a

8  Pelican mark in 1997 and also states that the company advertised Pelican products, cannot be

9  construed to support the more specific proposition--and the one critical to Fireman's duty to

10  defend--that the Pelican mark *was used in advertising in 1997*.

11      Finally, and most notably, there is no dispute that ES could not provide copies of any

12  advertisements or receipts from advertising activities in 1997.  (Plaintiff's Opposition at 6:3-

13  5, 7:4-12.)  AMICO's failure to produce proof of advertising activities after Fireman's

14  January 2, 2003, request for such documentation is especially telling and, in this Court's

15  view, supports a finding that no reasonable jury could conclude that there was a possibility

16  that ES in fact advertised any of its Pelican Accessories products prior to December 1, 1997.

17  (Defendant's Opposition, Ex. 16.)

## CONCLUSION

19      All of the undisputed facts suggest that ES never advertised its Pelican division

20  products in 1997.  Indeed, AMICO now does not actually contend that ES did so, and has

21  never identified any evidence of such advertising.  Instead, AMICO relies on the argument

22  that the aforementioned facts are not conclusive evidence that there was no advertising in

23  1997, (Plaintiff's Opposition at 4-7), and that without such conclusive evidence, Fireman's

24  cannot escape its duty to defend.  See Montrose, 6 Cal. 4th at 298-99.  Absolute proof of an

25  absence of advertising, however, is not required.  As the party with the burden of proof at

26  trial, AMICO has the burden to produce some evidence showing that there is a triable fact as

27  to ES's possible use of advertising in 1997.  See C.A.R. Transp. Brokerage Co., 213 F.3d at

28  480.  AMICO has not met this burden.  To the contrary, Fireman's has established that, at the

time of the tender offer, there was extrinsic evidence that precluded the possibility of coverage for the Counterclaims brought against ES, at least during the policy period, which ended on December 1, 1997.  AMICO has provided no evidence to the contrary.[2]  For the foregoing reasons, this Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**

Dated:  February 26, 2007

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

---

[2] As an alternative theory to support its cross-motion for summary judgment, Fireman's makes a series of arguments based on the willfulness of ES's alleged conduct and the damages available in actions for trademark infringement.  Since this Court holds that there was no possibility of coverage for the Counterclaims against ES, the Court finds no reason to delve into those arguments.